UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X

FRANCISCO MALDONADO and
RICARDO NARCIZO,

      Plaintiffs,

-against-

ZENLIGHTEN LLC d.b.a. GOBO;
HEALTHY VILLAGE LLC d.b.a. GOBO;
DHARADHARA LLC d.b.a. GOBO;
DARRYN WU; DAVID WU; YUKI CHEN;
TIEH JYH WU; and "CHEF JOSÉ,"

      Defendants.

-----------------------------------------------X



07 CV 10462

COMPLAINT

JUDGE SCHEINDLIN

RECEIVED
NOV 20 2007
U.S.D.C. S.D. N.Y.
CASHIERS

PRELIMINARY STATEMENT

    Plaintiffs, FRANCISCO MALDONADO and RICARDO NARCIZO, through their attorneys, Washington Square Legal Services, Inc., and the Urban Justice Center, allege upon knowledge as to themselves, and upon information and belief as to all other matters, as follows:

1.    This action seeks to compensate Plaintiffs Francisco Maldonado and Ricardo Narcizo for unpaid wages and other unlawful treatment they suffered while employed by Defendants Zenlighten LLC (d.b.a. "Gobo"), Healthy Village LLC (d.b.a. "Gobo"), and Dharadhara LLC (d.b.a. "Gobo") (together "Gobo"), which are owned and operated by Darryn Wu, David Wu, Yuki Chen, Tieh Jyh Wu, and "Chef José" (collectively, "Individual Defendants"), hereinafter referred to collectively as "Defendants."

2.    Gobo markets itself as embracing a philosophy of respect and compassion for all living things, but its treatment of employees does not reflect this philosophy. By

willfully violating federal and state employment laws, Defendants not only failed to meet their legal obligations as employers, but also failed to live up to their publicly stated commitment to compassion for all living beings and to the expectations of their socially-conscious patrons.

3.    Plaintiffs now bring this action to redress Defendants' violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq., N.Y. Lab. Law §§ 190 et seq. and 650 et seq., and New York state common law.

## JURISDICTION & VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over claims arising under 29 U.S.C. §§ 216(b) and 2617(a).    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

5.    Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), as the conduct or omissions giving rise to this action occurred within this District, and Defendants are located in and do business in this District.

## PARTIES

### Plaintiffs

6.    Plaintiff FRANCISCO MALDONADO worked as a line chef at Gobo's West Village location, 401 Avenue of the Americas, New York, NY 10014, from approximately December 2002 until approximately March 2006.

7.    Plaintiff RICARDO NARCIZO worked as a food preparation worker at Gobo's West Village location, 401 Avenue of the Americas, New York, NY 10014, from approximately November 2004 until approximately February 2007.

8.    At all times relevant to this action, Plaintiffs were Defendants' employees within the meaning of 29 U.S.C. §§ 203(e)(1) and 2611(3) and N.Y. Lab. Law §§ 2(5), 190(2), and 651(5).

**Defendants**

9.    Defendant ZENLIGHTEN LLC is a corporation organized and existing under the laws of the State of New York and is located at 401 Avenue of the Americas, New York, NY 10014.  At all relevant times, ZENLIGHTEN LLC operated and did business as "Gobo."

10.   Defendant HEALTHY VILLAGE LLC is a corporation organized and existing under the laws of the State of New York and is located at 401 Avenue of the Americas, New York, NY 10014.  At all relevant times, HEALTHY VILLAGE LLC operated and did business as "Gobo."

11.   Defendant DHARADHARA LLC is a corporation organized and existing under the laws of the State of New York and is located at 1426 Third Avenue, New York, NY 10028.  At all relevant times, DHARADHARA LLC operated and did business as "Gobo."

12.   Gobo is a vegetarian restaurant that markets a philosophy of "Zen compassion" to the New York City community.  Gobo has two locations—the first in the West Village at 401 Avenue of the Americas, New York, NY 10014 (hereinafter "Gobo's West Village Location") and the second on the Upper East Side at 1426 Third Avenue, New York, NY 10028.

13.   Defendant DARRYN WU is an educated restaurateur with a restaurant management degree.  At all times relevant to this action, he owned and managed Gobo.

- 3 -

14. Defendant DAVID WU is an educated restaurateur. At all times relevant to this action, he owned and managed Gobo.

15. Defendants DARRYN WU and DAVID WU are brothers, and at all relevant times, they owned and operated Gobo together.

16. Defendant YUKI CHEN, known to the Gobo kitchen staff as "Mama Wu," is an experienced chef and restaurateur. She is the Chef de'Cuisine at Gobo and participated in the operation and management of Gobo at all times relevant to this action.

17. Defendant TIEH JYH WU, known to the Gobo kitchen staff as "Papa Wu," is an experienced restaurateur. At all times relevant to this action, he participated in the operation and management of Gobo.

18. Defendant "CHEF JOSE" was the head chef at Gobo's West Village Location at all times relevant to this action.

19. At all times relevant to this action, all Individual Defendants had the power to hire and fire employees at Gobo, establish their wages, set their work schedules, and maintain their employment records.

20. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of 29 U.S.C. §§ 203(d) and 2611(4)(A) and N.Y. Lab. Law §§ 2(6), 190(3) and 651(6).

21. Zenlighten LLC, Healthy Village LLC, and Dharadhara LLC do business as "Gobo" and comprise an enterprise which is engaged in commerce, in that it has employees handling, selling, or otherwise working on goods or materials that have been moved in

- 4 -

interstate commerce and an annual gross volume of sales made or business done exceeding $500,000.

22. At all times relevant to this action, Zenlighten LLC, Healthy Village LLC, and Dharadhara LLC employed more than 50 employees at Gobo.

23. The primary business of Gobo is the preparation and sale of food and meals for take-out and consumption on the premises. It is a "restaurant industry" within the meaning of N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.1.

24. At all times relevant to this action, Defendants employed Plaintiffs within the meaning of 29 U.S.C. §§ 203(g) and 2611(3).

## STATEMENT OF FACTS

### Plaintiffs

25. Plaintiffs Francisco Maldonado and Ricardo Narcizo are both experienced restaurant workers of Mixteco descent. The Mixteco are an indigenous people who come from agrarian communities and primarily speak a dialect of Mixteco, an unwritten Meso-American Indian language.

26. Mr. Maldonado began working at Gobo's West Village location on or around December 5, 2002, around the time it first opened for business.

27. Mr. Maldonado primarily worked in Gobo's kitchen, which is styled as a "country kitchen" visible to customers from the dining room.

28. Mr. Maldonado headed a cooking line which prepared appetizers, small dishes, and fried items on the Gobo menu.

29. Throughout his employment at Gobo, Mr. Maldonado generally worked six days a week, 11 hours per day.

- 5 -

30.    Mr. Narcizo began his employment at Gobo's West Village Location on or around November 1, 2004.

31.    Mr. Narcizo was primarily stationed in Gobo's basement and had the responsibility of receiving, stocking, cleaning, peeling, and chopping the various vegetables that headline Gobo's celebrated vegetarian menu.

32.    Mr. Narcizo generally worked six days a week. From the beginning of his employment to approximately April 2006, he generally worked 11 hours per day. From approximately April 2006 to the end of his employment in approximately February 2007, he generally worked eight hours per day.

33.    At all times relevant to this action, Plaintiffs handled or worked on goods that had been moved in or produced for interstate commerce.

### Gobo Restaurant

34.    Gobo serves primarily vegan food made with almost no animal-based products, appealing to New York City diners seeking enlightened and compassionate consumerism.

35.    Gobo uses the slogan "food for the five senses" and claims to offer "the spiritual experience of healthy vegetarian dining."

36.    According to its web site, Gobo drew inspiration from the West Village and opened its doors to offer "exciting vegetarian global cuisine that conveys the diversity of the neighborhood."

37.    In an interview promoting Gobo, Defendant Darryn Wu told VegCooking.com: "Helping the environment, being compassionate to all beings, and helping people live a healthier lifestyle makes this the most rewarding experience."

38.    In a 2004 profile of Gobo's owners, *The New York Sun* reported that Defendants David and Darryn Wu opened Gobo in adherence with the advice of their mother, Defendant Yuki Chen: "Don't open a restaurant just to make money. You can open any restaurant and do that. Be kind and compassionate by teaching people about the vegetarian lifestyle."

39.    In *The New York Sun's* profile, Defendant Darryn Wu told the reporter, "I think there are only so many businesses that you can do to not only make money but have a positive impact on society. This is one of the few."

40.    *The New York Sun* also quoted Defendant David Wu as saying, "When you do good for others, it's karma. It comes back to you."

41.    In addition to owning and operating Gobo, one or more Individual Defendants and their family members owned and operated Zen Palate establishments in the New York City area for about 15 years. Zen Palate is another vegetarian restaurant that markets a healthy dining experience to New Yorkers.

42.    When visiting Gobo's West Village Location, patrons enter into a stylish dining room, where they have a clear view of an open "country kitchen" in which three lines of cooks prepare their vegetarian entrées, appetizers, and desserts.

43.    Behind the cooking lines, a staircase connects the open kitchen to Gobo's basement. The basement contains industrial machines for food preparation, such as dumpling makers, pasta makers, and industrial mixers, as well as large refrigerators and freezers.

44.    Workers in the basement use the machines and workspace to prepare vegetables and other ingredients for cooking.

45. During Plaintiffs' employment at Gobo, the kitchen staff at Gobo's West Village Location consisted primarily of workers of Chinese and Mixteco descents. Chinese and Mixteco workers staffed the cooking lines in the open kitchen, while the basement staff consisted primarily of Mixteco workers.

## Mr. Maldonado's Labor and Wages

46. Mr. Maldonado began work at Gobo on or around December 5, 2002. He was offered employment at Gobo by Defendant Yuki Chen, whom he knew as "Mama Wu" from his employment at Zen Palate, another vegetarian restaurant owned and operated by one or more Individual Defendants and their family members.

47. Prior to his employment at Gobo, Mr. Maldonado had worked in food preparation for approximately 10 years at Zen Palate.

48. Thus, Mr. Maldonado began his employment at Gobo already familiar with the preparation required to produce eclectic vegetarian fare.

49. Over the course of his employment, he developed even more expertise in preparing a variety of international vegetarian dishes, including numerous types of dumplings, wontons, and spring rolls on the Gobo menu.

50. Before the restaurant opened for business on a typical work day, Mr. Maldonado prepared and cooked the vegetarian fillings that went into the dumplings, wontons, and spring rolls.

51. At times, he washed, peeled, and chopped vegetables that were essential to the dishes he prepared in the kitchen.

52. Sometimes he also unloaded delivery trucks and stocked vegetables and food items in the basement.

- 8 -

53. For the better part of his work day, Mr. Maldonado worked in Gobo's open kitchen, where he headed a cooking line that produced appetizers, small dishes, and fried items on the Gobo menu.

54. Whenever Gobo customers ordered appetizers, Mr. Maldonado and his line cooked or prepared their food. Mr. Maldonado would frequently fry Gobo's various dumplings and wontons in hot cooking oil and roll its various spring rolls by hand. He also prepared other "quick bites" on the Gobo menu, such as sesame rolls and scallion pancakes.

55. According to a 2006 *New York Times* restaurant review, "appetizers bested entrées" at Gobo.

56. In addition to appetizers and small plates, Mr. Maldonado's line also prepared items that formed components of larger dishes. For example, some of the soups and entrées on the Gobo menu include wontons or other items that were prepared by the workers on his line.

57. Because of Mr. Maldonado's skill and knowledge of the Gobo menu, one or more Individual Defendants frequently asked him to train new kitchen workers when they began employment at Gobo.

58. Toward the end of his typical work day, Mr. Maldonado was required to clean his cooking area in the Gobo kitchen.

59. Mr. Maldonado was frequently required to dump out and replace cooking oil that he had used to cook items on his line, as well as cooking oil used by other workers on other cooking lines.

60. During the entire period of his employment, Mr. Maldonado generally performed the aforementioned tasks for 11 hours per day, six days a week.

61. Additionally, Mr. Maldonado was sometimes required to stay past the end of his long shift to perform other workers' duties, including cleaning up their cooking areas and mopping the floors.

62. On multiple occasions, one or more Individual Defendants instructed Mr. Maldonado to clean the floors with heavily concentrated bleach, which he was not permitted to dilute. He was never given protective gear such as goggles, masks, or heavy-duty gloves to do this work.

63. When Defendant Yuki Chen first offered Mr. Maldonado employment at Gobo, she promised to pay him approximately $1700 per month and assured him that his schedule would be comparable to his previous work schedule at Zen Palate.

64. In contrast to what Ms. Chen had promised, Mr. Maldonado was required to work longer hours at Gobo than he had at Zen Palate. Despite his increased hours, Mr. Maldonado was paid less than $1700 a month when he began working at Gobo.

65. From on or around December 5, 2002 to in or around the fall of 2003, Mr. Maldonado was paid approximately $800 every 14 days.

66. In or around the fall of 2003, Mr. Maldonado's wage payment schedule changed from payment every two weeks to payment on the 15th day and the last day of every month. His work schedule remained the same.

67. From approximately the fall of 2003 to approximately the beginning of 2005, Mr. Maldonado was paid about $900 twice a month.

68.  From approximately the beginning of 2005 to approximately the fall of 2005, Mr. Maldonado was paid about $950 twice a month.

69.  From approximately the fall of 2005 until approximately March 22, 2006, Mr. Maldonado was paid about $1000 twice a month.

<u>Mr. Narcizo's Labor and Wages</u>

70.  Mr. Narcizo began his employment at Gobo on or around November 1, 2004.

71.  Mr. Narcizo began working at Gobo with little knowledge of vegetarian cooking. He received training from Mr. Maldonado and soon learned to prepare vegetables with expert skill.

72.  Mr. Narcizo frequently unloaded shipments of vegetables and other food items from delivery trucks and stocked those items in the Gobo basement. He was knowledgeable of the vegetables used on Gobo's menu and sorted the shipments accordingly.

73.  For the better part of his work day, Mr. Narcizo worked in the Gobo basement cleaning, peeling, and chopping the vegetables that composed almost every dish on Gobo's vegetarian menu.

74.  Mr. Narcizo also operated industrial processing machines to further purée some of the vegetables to be cooked upstairs for use in dumplings and wontons.

75.  Once the vegetable stuffing for the dumplings and wontons was cooked, Mr. Narcizo carried it to the basement, where he drained, cooled, and processed it. He then prepared the dumplings and wontons using the industrial machines in the basement.

76.  While the machines were running, Mr. Narcizo sometimes had to reach his hand into the machinery to remove pieces of food that were jamming the machine.

77. Toward the end of his typical work day, Mr. Narcizo was required to clean the areas where he had worked in the basement and to clean the inner and outer parts of machines that he had operated during the day, including potentially dangerous parts.

78. On most days, Mr. Narcizo was required to mop the floors in the basement and the kitchen.

79. On multiple occasions, one or more Individual Defendants instructed Mr. Narcizo to clean the floors with heavily concentrated bleach, which he was not permitted to dilute. He was never given protective gear such as goggles, masks, or heavy-duty gloves to do this work.

80. From the beginning of his employment until approximately April 2006, Mr. Narcizo generally performed the aforementioned tasks for 11 hours per day, six days a week.

81. Additionally, Mr. Narcizo was sometimes required to continue working past the end of his long shift.

82. From approximately November 1, 2004 until approximately the middle of 2005, Mr. Narcizo was paid about $650 twice a month.

83. From approximately the middle of 2005 to approximately the beginning of 2006, Mr. Narcizo was paid about $700 twice a month.

84. In or around 2005, Mr. Narcizo accepted money from one or more Individual Defendants to pay for medical expenses for an eye problem related to his work at Gobo. For about five to seven months, Defendants withheld about $100 from Mr. Narcizo's wages each pay day.

85. From approximately the beginning of 2006 to approximately April 2006, Mr. Narcizo was paid about $750 twice a month.

86.    In or around April 2006, Defendants suddenly implemented a change in the work schedules and wages of the kitchen employees at Gobo's West Village Location. As a result, Mr. Narcizo's work hours were reduced to approximately eight hours per day, though he continued working six days a week. His wages changed to approximately $350 every week.

87.    When forced to work a grueling 11 hours each day, Mr. Narcizo had felt like a slave. While he did not know why the sudden change in his schedule occurred, he felt as if this change had freed him from slavery.

Inadequate Compensation for Plaintiffs' Labor and Services

88.    At or around the time of the policy change, one or more individual Defendants called a meeting for the Mixteco workers at Gobo's West Village Location, which Mr. Narcizo was required to attend. During this meeting, Mr. Narcizo was instructed to sign an unidentified document. The content of the document was never explained to Mr. Narcizo, and he did not understand what he signed.

89.    As experienced restaurateurs, Individual Defendants knew or should have known their obligations under federal and state labor laws.

90.    Defendants failed to pay Mr. Narcizo the statutorily prescribed minimum wage for most of the time he was employed at Gobo.

91.    Defendants failed to pay Plaintiffs overtime compensation of 1.5 times their regular rates as required by law for all hours worked in excess of 40 each week.

92.    To the extent that Plaintiffs worked in excess of 10 hours in a day for Defendants, Defendants did not compensate them with an additional hour's pay at the minimum wage as prescribed by state labor laws.

93. Defendants' failure to pay minimum wage, overtime compensation, and spread-of-hours pay to Plaintiffs was willful.

94. For multiple pay periods in or around 2005, Defendants intentionally deducted money from Mr. Narcizo's wages, which were already below the legally mandated minimum wage.

95. These deductions from Mr. Narcizo's wages were not authorized within the meaning of N.Y. Lab. Law § 193.

96. Defendants' deductions from Mr. Narcizo's wages were willful.

97. Defendants never told Plaintiffs that they were entitled to a minimum wage, overtime compensation, or an additional hour of pay at minimum wage on days when their spread of hours exceeded 10 hours.

98. Individual Defendants frequently required Plaintiffs and other Mixteco workers to complete additional work after the end of their shifts, although Chinese workers who worked alongside them were not asked to stay beyond their scheduled time.

99. When Mr. Maldonado complained to one or more Individual Defendants that only Mixteco workers were required to stay late, Defendants ignored his complaints and refused to compensate him at all for his additional work time.

Defendants' Failure to Post Signs

100. From approximately the time that Mr. Maldonado began work in approximately December 2002, until approximately April 2006, Defendants did not post the legally required posters at Gobo's West Village Location informing workers of their rights under the FLSA, New York Labor Law, and New York State Department of Labor regulations.

101.  Although Mr. Narcizo observed newly-posted signs in the kitchen in or around April 2006, Defendants never explained the meaning of those signs.

102.  During the period they worked at Gobo, Plaintiffs Maldonado and Narcizo were unaware of their rights under the FLSA, New York Labor Law, and New York State Department of Labor regulations.

<u>Failure to Comply with the Family Medical Leave Act</u>

103.  In approximately March 2006, Mr. Maldonado became aware that his father needed unplanned medical care for a serious health condition.

104.  At that time, Mr. Maldonado had been employed at Gobo for over a year, and had worked in excess of 1,250 hours during the previous 12-month period.

105.  On or around March 22, 2006, Mr. Maldonado informed one or more Individual Defendants that he needed time off to care for a parent with a serious health condition.

106.  At that time, these Individual Defendants promised Mr. Maldonado that he could resume his position at Gobo after his leave of absence.

107.  Relying on these promises, Mr. Maldonado left clothing and photographs of his family in a locker at Gobo that was designated as his.  He believed that his rights to his belongings would be protected in his absence.

108.  For approximately 10 weeks, Mr. Maldonado took unpaid leave from his job at Gobo to care for his sick father.

109.  In approximately June 2006, Mr. Maldonado returned to Gobo to resume his position.  However, Defendants refused to restore him to his position.  One or more Individual Defendants told Mr. Maldonado that there were no positions available at all.

110.  One or more Individual Defendants told Mr. Maldonado that a position would be open for him as soon as another kitchen worker left Gobo. These Individual Defendants promised to call him as soon as another kitchen position became available.

111.  Mr. Maldonado relied on the promises from these Individual Defendants and waited to hear from them.

112.  Approximately one month later, upon learning that a kitchen worker had left his job at Gobo, Mr. Maldonado contacted one or more Individual Defendants to request restoration to his position.

113.  Defendants once again refused to restore Mr. Maldonado to his previous position or an equivalent position.

114.  Around that time, Mr. Maldonado attempted to retrieve his belongings from his locker at Gobo, but he found out that the lock had been cut under Defendants' supervision and his belongings were gone.

115.  Mr. Maldonado learned that Defendants and/or their agents had distributed his belongings among the kitchen staff. He was not able to recover possession of any of these items.

CAUSES OF ACTION
FIRST CLAIM FOR RELIEF
FEDERAL MINIMUM WAGE VIOLATIONS
PLAINTIFF NARCIZO

116.  Mr. Narcizo realleges and incorporates paragraphs 1 through 115 above.

117.  Defendants failed to pay Mr. Narcizo the applicable minimum wage, in violation of the Fair Labor Standards Act minimum wage provision, 29 U.S.C. § 206.

118.  Defendants' failure to pay the minimum wage was willful under 29 U.S.C. § 255(a).

- 16 -

119. As a result of Defendants' conduct, Mr. Narcizo is entitled to an award of unpaid minimum wages in an amount to be determined at trial, and to an equal amount in liquidated damages.

## SECOND CLAIM FOR RELIEF
## FEDERAL OVERTIME VIOLATIONS
## PLAINTIFFS MALDONADO AND NARCIZO

120. Plaintiffs reallege and incorporate paragraphs 1 through 119 above.

121. Defendants knowingly and intentionally failed to pay Plaintiffs the applicable overtime premium of 1.5 times their respective regular rates of pay for each hour worked in excess of 40 hours per week, in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1).

122. Defendants' failure to pay overtime premiums was willful under 29 U.S.C. § 255(a).

123. As a result of Defendants' conduct, Plaintiffs are entitled to an award of unpaid overtime premiums in an amount to be determined at trial, and to an equal amount in liquidated damages.

## THIRD CLAIM FOR RELIEF
## STATE MINIMUM WAGE VIOLATIONS
## PLAINTIFF NARCIZO

124. Mr. Narcizo realleges and incorporates paragraphs 1 through 123 above.

125. Defendants knowingly and intentionally failed to pay Mr. Narcizo the applicable minimum wage, in violation of N.Y. Lab. Law § 652 and supporting regulations and orders of the New York State Department of Labor.

126. Defendants' failure to pay the minimum wage was willful under N.Y. Lab. Law §§ 663(1) and 198(1-a).

127. As a result of Defendants' conduct, Mr. Narcizo is entitled to an award of unpaid minimum wages in an amount to be determined at trial, and to an amount equal to one quarter of his unpaid minimum wages in liquidated damages.

FOURTH CLAIM FOR RELIEF
STATE OVERTIME COMPENSATION VIOLATIONS
PLAINTIFFS MALDONADO AND NARCIZO

128. Plaintiffs reallege and incorporate paragraphs1 through 127 above.

129. Defendants knowingly and intentionally failed to pay Plaintiffs the applicable overtime premium of 1.5 times their respective regular rates of pay for each hour worked in excess of 40 hours per week, in violation of N.Y. Lab. Law §§ 190 et seq. and 650 et seq. and supporting regulations and orders of the New York State Department of Labor, including but not limited to N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3.

130. Defendants' failure to pay overtime premiums was willful under N.Y. Lab. Law §§ 663(1) and 198(1-a).

131. As a result of Defendants' conduct, Plaintiffs are entitled to an award of unpaid overtime premiums in an amount to be determined at trial, and to an amount equal to one quarter of their unpaid overtime premiums in liquidated damages.

FIFTH CLAIM FOR RELIEF
STATE SPREAD-OF-HOURS PAY VIOLATIONS
PLAINTIFFS MALDONADO AND NARCIZO

132. Plaintiffs reallege and incorporate paragraphs 1 through 131 above.

133. Defendants knowingly and intentionally failed to pay Plaintiffs one additional hour's pay at the applicable minimum wage rate for every day that they worked in excess of 10 hours, in violation of N.Y. Lab. Law §§ 190 et seq. and 650 et seq. and supporting

regulations and orders of the New York State Department of Labor, including but not limited to N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.

134. Defendants' failure to pay spread-of-hours pay was willful under N.Y. Lab. Law §§ 663(1) and 198(1-a).

135. As a result of Defendants' conduct, Plaintiffs are entitled to an award of unpaid spread-of-hours pay in an amount to be determined at trial, and to an amount equal to one quarter of their unpaid spread-of-hours pay in liquidated damages.

SIXTH CLAIM FOR RELIEF
ILLEGAL WAGE DEDUCTIONS
PLAINTIFF NARCIZO

136. Mr. Narcizo realleges and incorporates paragraphs 1 through 135 above.

137. Defendants knowingly and intentionally made unauthorized deductions from Mr. Narcizo's wages, in violation of N.Y. Lab. Law § 193 and N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5.

138. Defendants' deductions from Mr. Narcizo's wages were willful under N.Y. Lab. Law §§ 663(1) and 198(1-a).

139. As a result of Defendants' conduct, Mr. Narcizo is entitled to an award of compensatory damages and liquidated damages in an amount to be determined at trial.

SEVENTH CLAIM FOR RELIEF
UNJUST ENRICHMENT
PLAINTIFFS MALDONADO AND NARCIZO

140. Plaintiffs reallege and incorporate paragraphs 1 through 139 above.

141. Defendants were enriched by withholding full compensation from Plaintiffs for their labor and services at Plaintiffs' expense.

- 19 -

142. The circumstances between Plaintiffs and Defendants are such that equity and good conscience require Defendants to make restitution.

143. Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

EIGHTH CLAIM FOR RELIEF
QUANTUM MERUIT
PLAINTIFFS MALDONADO AND NARCIZO

144. Plaintiffs reallege and incorporate paragraphs 1 through 143 above.

145. Plaintiffs performed labor and services for the Defendants in good faith with expectation of full compensation.

146. Defendants received full benefits of Plaintiffs' labor and services, but failed to compensate Plaintiffs for the fair and reasonable value of that labor and those services.

147. As a result of Defendants' conduct, Plaintiffs sustained damages in an amount of the fair and reasonable value of their labor and services.

148. Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

NINTH CLAIM FOR RELIEF
INTERFERENCE WITH RIGHTS UNDER FAMILY MEDICAL LEAVE ACT
PLAINTIFF MALDONADO

149. Mr. Maldonado realleges and incorporates paragraphs 1 through 148 above.

150. Mr. Maldonado was entitled to 12 weeks of leave under the Family Medical Leave Act, 29 U.S.C. § 2612(a).

151. Defendants knowingly and intentionally failed to restore Mr. Maldonado to his position or an equivalent position upon return from his authorized leave to care for his father, in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

152. Defendants' failure to restore Mr. Maldonado to his position or an equivalent position interfered with his rights under the Family Medical Leave Act and was willful.

153. As a result of Defendants' conduct, Mr. Maldonado is entitled to an award of compensatory damages in an amount to be determined at trial, and to an equal amount in liquidated damages.

TENTH CLAIM FOR RELIEF
CONVERSION
PLAINTIFF MALDONADO

154. Mr. Maldonado realleges and incorporates paragraphs 1 through 153 above.

155. Defendants willfully and deliberately took and assumed ownership of Mr. Maldonado's personal effects without authorization.

156. Defendants exercised unauthorized dominion over Mr. Maldonado's personal effects, to the exclusion of his property rights.

157. By their actions, Defendants interfered with Mr. Maldonado's rights to his personal property.

158. Mr. Maldonado is entitled to compensatory damages in an amount to be determined at trial.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a) Award compensatory and liquidated damages to Plaintiffs Maldonado and Narcizo for unpaid minimum wages, overtime premiums, and spread-of-hours pay;

b) Award Mr. Narcizo compensatory damages and liquidated damages resulting from Defendants' illegal wage deductions;

c) Award compensatory damages to Plaintiffs Maldonado and Narcizo for unjust enrichment and quantum meruit under New York state law;

d) Award Mr. Maldonado compensatory and liquidated damages, pursuant to 29 U.S.C. § 2617(a)(1)(A), in an amount to be determined at trial;

e) Award compensatory damages to Mr. Maldonado for conversion under New York state law;

f) Award Plaintiffs Maldonado and Narcizo prejudgment and postjudgment interest;

g) Award Plaintiffs Maldonado and Narcizo attorneys' fees and costs, pursuant to 29 U.S.C. §§ 216(b) and 2617(a)(3) and N.Y. Lab. Law §§ 198(1-a) and 663(1);

h) Grant such other, additional, and further relief as the Court deems just and proper.

Dated: New York, New York
November 20, 2007

Respectfully submitted,

WASHINGTON SQUARE LEGAL SERVICES, INC.

Haeyoung Yoon (HY 8962)
Anjali Bhargava, Legal Intern
Amanda Klasing, Legal Intern
245 Sullivan Street, 5th Floor
New York, NY 10012
Tel: 212-998-6430
Fax: 212-995-4031

URBAN JUSTICE CENTER
Molly Biklen (MB 3491)
123 William Street, 16th Floor
New York, NY 10038
Tel: 646-459-3008
Fax: 212-533-4598

Attorneys for Plaintiffs Francisco Maldonado and Ricardo Narcizo